Good morning, Your Honors, and may it please the Court. Matthew Monfortin, appearing on behalf of Appellant Brad Tschida. With the Court's permission, I'd like to cede five minutes of my time to my colleague, Mr. Howes, and I'd also like to reserve five minutes of time for rebuttal. So you talk for ten. That's the drill? Correct, Your Honor. Thank you. What I'd like to focus on this morning is the District Court's order granting qualified immunity to Appellee Jonathan Motl, but I'm certainly happy to take questions on other issues that the Court may have. This Court's decision in White v. Lee clearly established that the First Amendment prohibits government acts that would chill or silence a person of ordinary firmness. Those kind of acts include not only legal sanctions, but threats of legal sanctions by government officials. And it's also clearly established by this Court's opinion in Lind v. Grimmer, as well as the more recent opinion by the Third Circuit in Stilt v. Colino, that a citizen's complaint with regard to misconduct by government officials is protected speech. It's core First Amendment speech. And that's exactly what this case is about. My client, State Representative Brad Tschida, filed an ethics complaint against Governor Bullock and a member of Governor Bullock's cabinet, and then disclosed that complaint to fellow legislators. The very next day, Governor Bullock's hand-picked Commissioner of Political Practices, Jonathan Motl, took to the airwaves, he went in front of the Great Falls Tribune, and said that my client would be subject to criminal prosecution. What if he was just reading the statute? What if the interviewer had said, gee, are there penalties for what Mr. Representative Tschida has done? And he said, well, let me read you the statute. And he read him the statute. Would that be a threat? If all he had done was read the statute and nothing more, this would be a closer case. But that's not all that Mr. Motl did. Mr. Motl said, I am going to seek what he termed as a severe penalty. And this was not an idle threat, because paragraph 2A of the statute that's at issue, 2-2-136, expressly grants the commissioner authority to impose a $1,000 fine on ethics complainants who ---- But if the statute's constitutional, he's permitted to do that. If the statute's constitutional ---- And I understand the constitutionality of the statute in this respect is at issue, but if the statute is constitutional, he was acting appropriately or at least within his discretion to say he would do that. Well, even if the statute is constitutional, it's not constitutional to use the statute as a threat. Well, how can those two things exist? If the statute is constitutional and all he's saying is, I'm going to enforce a constitutional statute, how can that ---- What does that violate? What principle does it violate? If he is threatening to bring a prosecution, and then the day after election, after the election day states, oh, just kidding, I'm not going to prosecute, that's clearly an intent to threaten. Well, it's a threat to enforce, again, by hypothesis, a constitutional statute. I don't see that that gets you anywhere. And if the statute is constitutional, then yes, we have more of a problem. The question is whether the statute is unconstitutional, and for you to prevail on your qualified immunity, you're going to have to show that Mr. Model knew that it was constitutional, was obviously constitutional. Yes, that it was ---- I'm sorry, obviously unconstitutional. Or patently unconstitutional. That's right. It would have had to have been obvious to him that it was unconstitutional. Yes. So you've got two steps. You've got to persuade us that it's unconstitutional, and two, that it was obvious and should have been obvious to everybody. Yes, Your Honor. And we certainly believe that it's unconstitutional. I'm going to defer those questions to my colleague. But not only is it unconstitutional, it's patently unconstitutional, because there is case law from this court, starting with Lynn v. Grimmer, that makes clear that these kinds of confidentiality statutes, these gag rules, basically, are unconstitutional. And not only do we have authority from this court, we have the Stilp case from the Third Circuit that involves an identical statute. And would Stilp put Mr. Model on notice that his conduct violated the Constitution? Yes, Your Honor. This court has made clear that in reviewing what law has been clearly established, it's not only this court's decisions, it's not only Supreme Court decisions, but also decisions issued by other circuits. Other circuits can establish, clearly establish. What case establishes that? This is the Drummond v. City of Anaheim. And I apologize for not citing it in the briefs, but there's that. It's not in the briefs? It's not in the briefs. But that's been a long term, or that's been a long policy of this court, that clearly established law can be established not only by Ninth Circuit cases, not only by Supreme Court cases, but by cases from other circuits. If any other circuit has said the proposition and we haven't weighed in on the question, then Mr. Model is liable in 1983 for following? Yes, Your Honor. Third Circuit cases? Yes, Your Honor. If that case has been established by the Third Circuit, this court looks to not only its own case law, but other circuits as well. That's news to me. It's news to me. Well, again, it's a case of, I don't have the site. Or I'll say it this way. So stated, it is news to me. I mean, if I'm trying to figure out if something in the law is well established, I will read the cases from other circuits, but if the only case directly on point is from the Third Circuit and there's nothing in this circuit, it's uphill work to convince me that it's established law for someone behaving in this circuit. That would suggest to us that if it's clearly established, that we would have no choice when the issue is presented to us but to follow still because it's clearly established. That proposition is demonstrably wrong. Well, again, I'm going by this Court's decision. Right. But as a premise, it's just simply wrong because otherwise it suggests that we are bound by that. Well, what it may suggest is that it's so obvious the case hasn't come up in front of the Ninth Circuit yet, but it has been dealt with in front of other circuits, and a reasonable government official, especially a government official who's an attorney, who's a prosecutor, should know that. And should be reading F-3rd to figure out what they're saying in Philadelphia. Yes, and should certainly be reading this Court's decision, such as Lynn v. Grimmer. Lynn v. Grimmer is certainly enough to put a reasonable government official, especially an attorney, on notice that this kind of statute is blatantly unconstitutional. Well, what if we were to conclude that the unconstitutionality of the statute is clearly established with respect to the governor but not with respect to, I'm sorry, I'm not going to remember her name, Ms. O'Leary. So what if we were to conclude, as the district judge did, what happens? Is there qualified immunity? Because as to Ms. O'Leary, I'm hypothesizing that we would say the law as to her is not clearly established. The law was clearly established in general because Ms. O'Leary is not. You didn't go along with the hypothetical. I'm saying what if we were to conclude that the law was very clearly established as to elected officials, such as the governor, but not clearly established to appointed officials, such as Ms. O'Leary. In other words, what if we were to agree with the district judge? In that case, there's still liability that attaches to Mr. Modell because it was clearly established that Governor Bullock, that a complaint issued against Governor Bullock could be disclosed. So there were still threats being made. But he was threatening prosecution with respect to disclosure as to Ms. O'Leary. Disclosure as to both of them. It wasn't Mr. Modell saying, you disclosed this complaint against Ms. O'Leary, therefore I'm going to prosecute you for that. That's not, Mr. Modell didn't qualify his statements that way. He said, I'm going to seek a severe penalty because you disclosed this complaint. Not that you disclosed part of this complaint. Well, but disclose this complaint includes as to Ms. O'Leary. Well, again, he didn't qualify it. But because he didn't qualify it, and because the complaint included Ms. O'Leary, I think if the law is unclear as to Ms. O'Leary, it's unclear as to whether or not he's within his rights to do the prosecution. And if it was unclear as to Ms. O'Leary, then that would probably be a good argument. But we clearly disagree. That's a different question. I get that. We clearly disagree that it was clearly established with regard to Governor Bullock, but not clearly established with regard to a high-level cabinet official. But you're saying that the district judge got it so wrong that any good district judge should have known, too. Well, with all due respect to the district court, that's exactly what we're saying. Yes, it is. Those are primarily the points I wanted to bring up with regard to qualified immunity. So unless there's other questions by the panel, I'm happy to cede the rest of my time to my colleague. Okay, thank you. Thank you, Your Honor. Thank you, Your Honors, and may it please the Court. Taryn Hawes, appearing on behalf of the MEKI in this case. The ability... And before you start, let me ask, you're a student at UCLA? Correct. Welcome. Glad to have you. Thank you very much, Your Honor. The ability to criticize government and its processes is at the core of the First Amendment. People who file ethics complaints against government officials have a First Amendment right, not only to disclose the fact that they filed that complaint, but also to disclose the complaint itself. Any such restriction on this violates the First Amendment. It's content-based and cannot pass strict scrutiny. Now, in today's political climate, it's filled with misinformation and skepticism. It's very important that somebody is able to... The most effective way of responding to doubt in this climate is to show the exact complaint itself. It provides a vivid example that a complaint has been filed. And it's very powerful. This is why TV broadcasts... We're going to need some clarification from the State on this, because it seems that maybe the argument has shifted just a little bit. But if Mr. Shida had... If Mr. Shida was free, it would not be in violation of the statute, to come out and say the governor is doing all kinds of bad things. And then to say, not only is the governor doing bad things, but many of them violate the ethics rules here in Montana. And then, thirdly, those things are punishable through the filing of a complaint, and I intend to file a complaint that will detail all of the things I've just said. Now, none of that would be punishable under the statute, would it? It wouldn't be punishable under the statute. However, the statute still prohibits the complainant from actually disclosing the complaint itself. Right. So everything that is in the complaint now that Mr. Shida is fully capable of discussing publicly, none of that is prohibited under Montana law. Once he takes the formal proceeding, the formal act of filing the complaint, the rules of Montana were once the complaint is filed against an official, it becomes an internal matter, and we ask the parties not to do it. Now, one interesting thing that's in the statute doesn't seem to be at issue here is that the parties are asked to keep confidential any materials they may get in return from the government. That doesn't seem like an unreasonable, doesn't seem to be the source of your complaint. It's really just the complaint itself. Correct, Your Honor. You're not arguing that if the commissioner shared some materials back with you, that you would have an obligation to keep those confidential? Correct, Your Honor. Okay. So since all of this can be discussed in any way that you want, all the information is there, what's the problem? Being able to paraphrase the information is different than actually showing that you filed a complaint. But paraphrasing, I think, wasn't the question. I think the question included, here's the complaint I intend to file. I have not yet filed it. I think you can say that. So it's not paraphrasing. This is the complaint I intend to file. Well, I think actually with the complaint, well, whether or not you can disclose the complaint when it's filed and that you've actually filed it. When it's filed is different. Correct. I intend to file. I don't think that's prohibited by the statute. It might not, Your Honor. The issue is that actually vividly showing that you have filed a complaint. Okay. Is there anything in the statute that would say I have filed a complaint? Would it prohibit saying I have filed a complaint along the lines of the things I've previously disclosed? We were responding to the district court's opinion in saying that you cannot disclose the fact that you have filed a complaint. However, this is a substantial burden, being able not to disclose the complaint that you actually filed. There's a reason that TV news will often put a copy of complaints or documents on the air, and it's to vividly show that that complaint or that document has been filed. The statute says that what the complainant must do is maintain the confidentiality of the complaint. And that doesn't seem to gag him by saying either I filed a complaint or I filed a complaint and here's what I said. I can't disclose, give you a copy of the complaint, but here's what I'm complaining about. Right. Does the statute cover that? The statute, it's just, it's our, it would be our opinion that the statute does, whether it's read that it does cover the disclosure of the complaint itself or just the fact that it's filed, that that would both be unconstitutional. But I guess I'm trying to figure out, and we'll certainly ask the state. As I read it, it says the complainant shall maintain the confidentiality of the complaint. Does that cover the fact of the filing of the complaint? Does it cover just the disclosure of the document itself? Or does it cover the content of the complaint? As far as, we don't have an opinion on what the statute, what the text itself means, just that any of those, if they were read into the statute to, that the statute covers those, that it would be unconstitutional. And it would be a content-based restriction. Under Reed v. Town of Gilbert, the court there has said that signed provisions were a content-based restriction on speech, and they were a content-based restriction on speech because they treated differently, different types of speech depending on the subject matter that was communicated on those signs. Let me help you out just a little bit because it's an argument that I want the other side to be prepared to respond to. The thrust of some of the questioning you've been getting is, well, what more is added to, well, here's the information I think is in violation of the Essex rules. Here's what I'm going to put into the complaint. Actually, here's the complaint I intend to file but haven't filed it yet. What is added if he says, and I have now filed the complaint? Well, the one thing that's been added is we now know that the commission has to act on it, and whether the commission acts on it, when it acts on it, and so on, that itself is additional information important to the public. Correct, Your Honor, and it doesn't leave the complainant the ability to say, my complaint has been unduly delayed. I have a bias to arbitrate around the complaint. These are important points that the complainant cannot express. So there is something added by, and I have filed it. Correct, Your Honor, unless there's any further questions. So let's save some time for you. Thank you. Thank you, Your Honor. May it please the Court, I'm Stuart Segrist, Assistant Attorney General with the State of Montana, representing Jeff Mang in his official capacity. When the council table is Andres Halliday, who is representing Jonathan Modell in his personal capacity, Mr. Halliday will be taking questions as to qualified immunity, and I'm going to be handling questions as to the constitutionality of the statute. And I would agree. How do you anticipate splitting your time? Oh, I'm sorry, Your Honor, I meant to say that. We've suggested that I take 15 minutes and Mr. Halliday take five minutes, if that works for the Court. Whatever works for you is what we'll do. Thank you, Your Honor. I would agree with Judge Bybee that the main question and the first question is whether this statute is constitutional before you even get into qualified immunity. And it is because it meets the exception discussed in LEND. It's a far more narrowly drawn provision backed by more substantial interests. I hate to interrupt you so early, but you've got to tell me what you think the statute means. And you're referring to your question about whether it only applies to the complaint as a document or to the fact that you've, to saying I filed a complaint. Can you come in and say I have now filed a complaint? The complaint was filed this morning. Does that violate the statute? As we discussed in our brief, that wasn't directly addressed by the district court. But our position is that on the, you know, as a matter of natural reading of the statute, it only applies to the complaint as a document. It does not. So it's only disclosure of the document itself. That's right. Okay. So Mr. Tashita was perfectly free to go in and say I filed the complaint this morning and here's what I said. Yes. Could he read from the document? And then the reporter says, gee, can I get a copy? And he says, no, I can't do that. But I'm going to read you everything I said. It does not appear that the statute explicitly prohibits that. So it's only the physical document itself that can't be attached to an e-mail to fellow legislators who are making inquiries. As Your Honor noted, the language of 221364 appears to only apply to the complaint as a document. And let me just say that that's the primary purpose of the state is to protect the process itself, the documents that are part of this process. But under your reading of the statute, then, Mr. Tashita is perfectly free to come back and say I filed that complaint two weeks ago, and this is outrageous that the commissioner has not decided my complaint at this point on such a sensitive question. That is correct. Okay. So the complaint about delay and all of that are out of the case because the statute doesn't punish that. That's our position, Your Honor. I'm not sure what the statute accomplishes then. Yeah. If the complainant can read the complaint aloud and you say that doesn't violate the statute, if he can say I filed this, if he can say two weeks later I filed this two weeks ago and they haven't acted on it, then what's the statute accomplish? What's accomplished, and if you look at 221364, it's not just the complaint as a document. It's all documents involved in this proceeding. But the only thing at issue is the complaint. Right. That's what we're fighting about. Because the plaintiffs have said they're not fighting about their duty to keep confidential anything that the commissioner shares with them. That's right, but it's all covered, and my point is that what you're looking at is the state process itself. As Mr. Chita admitted, the reason he released this complaint was to make it look like official action had been taken, and that document with a stamp on it that says this has been accepted by the commissioner is different than simply saying I made these allegations. And the state can focus on its most pressing problem, on the most narrow presentation of this problem, and, in fact, the state should be encouraged to, as the Supreme Court has stated, should be encouraged to allow more speech, not less. Okay, but let me make sure I understand the state's position as to what is and is not prohibited. He files the complaint. He goes on TV and says, I filed the complaint. That's okay? Again, that wasn't decided, but that's our reading of the statute is it only applies to the complaint as a document. Okay, so the next step, he's asked, well, what's in it? He then reads the entirety of the complaint on TV. That's okay? I'm just trying to get the state's position on what the statute means. It does not appear to be explicitly prohibited by the statute. Do you prosecute it? Would you prosecute Mr. Chita for this? I think the question could arise as to whether it's the exact same conduct, whether he would have effectively provided the complaint as a document. Well, I'm just trying to get my hands on what is and is not prohibited by the statute. And our reading of the statute is that it just prohibits the provisioning of the complaint as a document. So that's the most narrow reading of the statute. But he couldn't show it to a reporter in confidence so the reporter could copy it down. Right. But he could read it to the reporter, and she could, if she's quick, she could write down everything she said. That seems to be what the statute says, yes, Your Honor. There's another qualification, too. He can show the complaint before he files it. Right? The state law doesn't prohibit that. As you talked about the stamping, the acceptance of the complaint being the critical. He could hand out the complaint at a press conference and then walk across the street and file it. You know, the statute doesn't, as I'm looking at it now, and this is not a question, again, we brief below, but it doesn't seem to have a specific timeline on when this confidentiality applies. But it presumes it's really, I mean, if it's a complaint, it's not a complaint until it's filed. That's a good point. It's an inchoate complaint until somebody's put a timestamp on it. That's a good point. And so under that reading, then, yes, it would allow a distribution of the complaint itself until it is actually filed. And I realize the point the court is trying to get to, which is how narrow can it get until it's not really protecting much. And, of course, what the state needs to do under Lynn is make it as narrow as possible. And that's what has, that's what the state has done here by not only allowing it or focusing just on the complaint as a document and, therefore, the state process itself, which, again, Chita admitted was the reason he released it, because he wanted to show official action had been taken. Well, the less and less the statute prohibits, the harder it is for you to say there's a compelling state interest in prohibiting it. And I understand that counter. But as the, this discussion was had in the Williams U. Lee case, and that was the argument on the other side there was this is so narrow that you're not really protecting anything. You're only protecting solicitation, direct solicitation for money, not all these other ways to solicit money. So that shows that you really don't have an interest. And the Supreme Court, sorry, Your Honor. The Supreme Court there said that it was simply a different specific problem outside of, in that case, one-on-one solicitation. And here it is outside of the explicit state complaint process. Let me shift gears, if I may, and that is the degree of scrutiny to be given. Is there a different degree of scrutiny to be given, depending on whether we're talking about complaint as to the governor compared to complaint as to Ms. O'Leary? Our position is that there is because whether it's content, and this is what the district court held. Yeah, I know that. Whether it's content, excuse me, whether it's content-based or not, is distinguished as between who the subject of the complaint is. That doesn't make any sense to me. And I think that. It's content-based no matter what. I think that it's content-based as to both. Is there a reason why we can give it or should give it different degrees of scrutiny? I think so, yes. Okay, so help me out on that. The cases, including Lend, that have addressed speech in the First Amendment context have continuously distinguished between public actors and private actors. And even before I get into that, I should, because you're focused on the complaint as filed here and Ms. O'Leary and the governor, I should note that the as-applied challenge is now moot. There is a two-year statute of limitations to bring an ethics complaint against someone in Montana, and CHITA released this complaint on November 2, 2016, so the statute of limitations ran November 2, 2018. That's Administrative Rules of Montana 44.10.6041B. So we're focused just on the facial challenge. And under a facial challenge, we win if we can show that there's a plainly legitimate sweep. There is a plainly legitimate sweep as to unelected, run-of-the-mill employees. And the First Amendment... Is the attorney general an elected official in Montana? Yes. So it's an independent. So the attorney general would get strict scrutiny as to that, strict scrutiny as to the governor, but not as to the Secretary of Commerce? And my point was even if you apply strict scrutiny to everyone, the statute should still be upheld because there's a plainly... That's the strong position. We're still following up on Judge Fletcher's. And I thought Judge Fletcher had asked me to assume that assuming it's content-based as to all, then how do we win as to Ms. O'Leary? Right. I did ask that, but I'm also trying to figure out... I rejected the explanation I've gotten so far as to why it's not content-based as to Ms. O'Leary if it's content-based as to the governor. And our position would be like the Supreme Court held, that the purpose is different. And so when you're looking at the purpose as to an unelected official, you can look at protecting their personnel file. That simply doesn't apply to an elected official. Well, I understand that, but that's justification. That's not whether it's content-based. And we feel that the first step is you have to look at whether it's content-based on its face, and it applies to confidentiality to all ethics complaints. It doesn't matter what's actually said in the complaint. So it applies by type, not by the content that's specifically made there. And that's Justice Alito in the Reed case provided a set of examples of signs that were okay to distinguish between. And one of those signs, in fact, was a sign for... and that was the concurrence, by the way, not the majority, just to be clear. But one of those signs was a sign that applied only to one-time events. And you had to look at the writing to some degree to determine if it was a one-time event. But the distinguishment was a type of sign, not the actual content of the sign, which the provisions had required the decision-maker to look to. And that was our argument, and that was what the district court held here. Could you come back to the statute of limitations issue? And I gather it's a mootness argument as to why it's not... Exactly. It's moot because of that, Your Honor. And so why is this moot? It's because Mr. Sheet is not going to file one of these frivolous complaints again? No, it's only moot as to the as-applied challenge, not to... He has a separate facial challenge, and he has said that he might want to file one of these again, and we admit that it wouldn't moot that challenge. But that's a different standard and an easier standard for us to meet because they have to show that it's unconstitutional in all its applications, and they can't do that as to unelected employees, for the reasons described in Lind, for the reasons described in New York Times v. Sullivan. There's a distinction between public actors and private actors under First Amendment jurisprudence, and that's a long-established principle. And, in fact, the majority... And are you saying that there's no strict scrutiny as to the ordinary employees, or are you saying it can survive strict scrutiny as to the ordinary employees? We're saying it survives strict scrutiny as to ordinary employees. And why is that? That's because ordinary employees are more akin to private actors than public actors. Yes, they work for the state, but just because you work for the state doesn't mean you leave your privacy behind. If you're a run-of-the-mill employee, anyway, it's different if you're elected, and the cases make that clear. Even if you're the head of a department, although you're appointed. And that, of course, is going to... To analogize this at the federal level, where we don't have independent constitutional actors in the executive, except for the president. The strict scrutiny would go as to the president, but as to all members of the cabinet. And I think it is different at the federal level, because those cabinet members are such public officials. But they're appointed. They are appointed, but it's not the same in Montana for appointed officials. Most people don't know who the director of commerce, which was the case here, is. They do know who their elected officials are. But even if you disagree with me on that, and you find that strict scrutiny should apply to appointed officials, the vast majority here are run-of-the-mill, unelected state employees. And the district court discusses that at ER 17, and that's the district court's order there. And he's talking about not only the vast majority of those covered by the Ethics Act being unelected employees, but also the fact that the actual complaints that were filed since 2012, of the subjects of those complaints, there were 85 of them. Only 22 were elected or appointed. So the majority, even of those actually filed, were run-of-the-mill, unelected state employees, which we think under LEND meets strict scrutiny. There's a more compelling interest in protecting their privacy. And they also don't have the means to respond the same as a public official does. Let me ask you this. I'm intrigued by this mootness question that might move us from as applied to facial. At the time the district court decided, it was no question about it and as applied? That's right. And so it's only passage of time between the district court's decision and ours that makes the difference? Right. Mootness occurred after, in fact, after our brief anyway was filed. So the question, in a sense, it's not mootness. It's a question of standing to continue the challenge as an as-applied challenge. I suppose you could look at it as a right, yes. Justice Ginsburg's Laidlaw opinion tells us that standing for purposes of mootness, standing on mootness and the degree of interest required is really different and that something that might not be enough for standing in the initial instance may be enough to save it from mootness. I'm not entirely sure of the fact that the passage of time between the district court decision, which clearly wasn't as applied and could have been as applied, means that we can't do the same thing that the district court did, even though the passage of time. If this were coming to us as an initial suit filed outside the two years, I would say it's got to be facial. That's a tricky question to me. And I think the difference is that we're not saying the entire case needs to go away, just the as-applied challenge. I understand what you're saying, but you're trying to make it into a different kind of case. I get that. Does this moot the 1983 action? Does the 1983 action not apply to the as-applied challenge? Because if this is a claim for money, the passage of time shouldn't affect that. It would only be for future relief. And I'm not speaking to the qualified immunity portion. I'm solely speaking to the challenge to the statute and whether the statute should be declared unconstitutional and enjoined from enforcement. So as to the damages in 1983, the passage of time doesn't make any difference at all then? I don't believe it does. I see I'm actually into the time that I wanted to provide. Don't worry. He'll get his time. Okay. Thank you, Your Honor. So, yeah, yeah, my focus is solely for the injunctive relief sought, and our position is that the as-applied challenge is now moot, so you're on to facial and the facial. As to prospective relief. As to prospective relief, exactly. And we feel that as to unelected employees, it meets not only the compelling interest but the more narrowly tailored aspects that Lynn spoke to. Now, I'm quite willing to give you the proposition that convinced the district judge that sort of line employees are really differently situated from elected officials. They took the job differently. They didn't put themselves out to be elected. All those things. I get that.  and the publicity that comes with it and so on. Taking all that, given how narrowly this statute prohibits actions with respect to the complaint, as you construe the statute, that sort of line employee is not protected from Mr. Sheed or anybody else saying he did all these bad things. I intend to file a complaint. I have filed a complaint, and I'll read it to you. The only thing that this statute protects that employee from is actually showing the complaint. Where is the compelling state interest in protecting that employee from that very small little additional thing? And I think this was discussed, not that exact point, but the focus on the process itself was discussed in the Komosinski case, and that's a Second Circuit case that we cite too. And the court there looked to the difference between information made in the state process and information outside that process and that there can be a distinction. Sure, and that's why they're not challenging anything that's shared from the commissioner back to the complainant. But this is completely within the control of the complainant. It is just the complaint. It's not anything else that has gone on. And we think that's the most natural reading. I will say that, and I would reiterate, we agree with Chita that this wasn't raised below. And I don't know that this court is obviously interested in that. Perhaps the best thing to do is to see if this isn't raised below. What wasn't raised below? Whether or not it applies to just the complaint as a document or whether it also applies to the fact of the filing of a complaint. I think it was just assumed that it applies to the complaint as a document. That's what was actually released here. But that actual distinction and what does the statute actually control and how far does it actually go, how narrow is it, was not explicitly briefed or discussed. I don't know how we decide the case if we don't know what the statute means. And what I would suggest is if you think the interpretation of the statute would be so narrow that it cuts out the compelling interest and thus creates an unconstitutional statute potentially, perhaps the best thing to do would be to send it back to the district court to analyze that or to certify the question to the Montana Supreme Court. I don't see the utility in that. Your concessions would be the same in front of the district court as they've been here today, right? Except that I think you would have to look at whether, even though the statute appears to only apply to the document as filed, if you look to a specific case as applied where someone is reading the complaint exactly, does that nevertheless fall within not keeping the confidentiality of the complaint, which is what the statute states. If I've understood you, you've said that prior to filing, officially filing, it would be okay under the statute for the complainant to distribute copies of the complaint that he or she intends to file, right? It does not seem to explicitly prohibit that. That's right. When you say seem, I'm trying to get my hands on whether you're in a position to tell us what the statute means. Are you just kind of any old person standing up here reading the statute along with us? And the reason I say that is just because it wasn't developed below your honor. But you're representative of the state. Representative of the state. And you're able to tell us what the statute means? And we argued. Or the state, what the state maintains it means? And we will read. Do you need to get permission from somebody else to tell us to narrow the reading of the statute? It certainly would make a difference. If somebody says, I intend to file a complaint, I'm going to read it to you, and you step off and say, you know something, I just want to warn you, that if you read the complaint you intend to file, that that would violate the statute. We're into prior restraints big time. So I guess the question is, are you authorized to tell us, or do you need to consult with somebody else before you can tell us what the statute means? What I am authorized to say is that our, and this is what we said in the brief, so I guess we can stand on that. We don't think it applies to discussion of the fact of the filing of the complaint. We think it applies only to the complaint as a document. Once filed. Once filed. And release of the document itself. And release of the document itself, yes, Your Honor. So it's in the brief and we can look at that. It's in the brief. That's what we've argued, and that's what we think the plain meaning of the statute is. And that's, no, I don't care what you think. I care what you represent. And that's what I represent, that it's the plain meaning of the statute, yes, Your Honor. Okay. And I'm sorry for the confusion. Again, I think it's because it wasn't discussed below. No, you're doing your best. That's okay. Thank you, Your Honor. Now, you have not saved some time, but let's pretend you have. Thank you. Thank you, Your Honors. May it please the Court. My name is Andreas Halliday. I represent former Commissioner of Political Practices, Jonathan Modell, in his individual capacity for the purposes of the limited issue of whether or not the District Court correctly granted Commissioner Modell's motion to dismiss based on qualified immunity. I appreciate you extending the courtesy of additional time to discuss this. I'm not going to belabor the law of qualified immunity. I know this Court is well aware of recent Supreme Court case law and myriad qualified immunity law. There are a few high points I'd like to hit and a couple of points I'd like to respond to made by Mr. Monfortin in his discussion. First, Commissioner Modell believes the District Court got it right in how it defined the allegedly clearly established right in this case for November of 2016, and that was whether the plaintiff had a clearly established right to disclose the complaint he had filed in light of the confidentiality provisions of 22136 sub 4. That got to the heart of the actual facts, conduct, and context of what this case is about, not a more amorphous or generally defined right such as the right to criticize government, akin to the right to be free from unreasonable search and seizures, all of which have been rejected as a proper framing of the allegedly clearly established right by the United States Supreme Court in the context of qualified immunity. Commissioner Modell also believes that then when this proper definition of the clearly established right was applied in this case, it was not clearly established that in November of 2016, Plaintiff Chita had a clearly established right to disclose this complaint in light of the confidentiality provision in the statute. Three main reasons I'll hit on. The District Court's opinion goes much farther in depth as does the respective briefing, but first and foremost, we disagree that Lind is on point precisely because Lind, if the court looks at the specific language of that case, actually carves out, does not answer the question here, which is a confidentiality or a prevention of the disclosure during the period, during which the state is actually making that determination, whether it's called the probable cause determination or just that initial cause determination. Lind expressly said, we're not deciding it. It's an open question and it's potentially constitutional. So it's Commissioner Modell's position that understands and be Sims, which looks to whether or not you've got either contrary precedent or equivocal precedent in that circuit, that that should be sufficient to say that this is not an answered question. And just to then respond to the issue of I don't know the case. I apologize of Drummond, the city of Anaheim. I don't think anybody knows it except for a council here. I mean, given Stanton v. Sims, the distinction and it's an important distinction of Lind. It doesn't really matter because then you've got a conflict essentially, or at least a disagreement between the Ninth Circuit in some way that a reasonable actor would be looking at, irrespective of what still says there. The second point. I'm going to make an exception. Anything Judge Roth says, I'm bound by. She's the third circuit judge, right? The second point would be, Your Honor, that given the existence of the statute, a duly enacted statute by the Montana legislature, which enjoys a presumption of constitutionality in Montana, but also a presumption of constitutionality, at least under qualified immunity analysis. The Grossman case, but also city of Costa Mesa, say that Commissioner Motil, so long it was reasonable, reasonably relies on that statute. He's going to be given qualified immunity in this case. And then finally, what Costa Mesa also looked at, and I think it's an important consideration, is that when you consider the district court proceedings in this case, when you consider all of the briefing, the very nuanced distinction that the district court judge made in this case, the appellate briefing, the discussions here today, and essentially all of the nuanced parsing of the constitutionality of this statute, when you look back at November of 2016, it's not possible to say that Commissioner Motil should have known he was, or was violating a clearly established constitutional right or that he was just plainly incompetent. Put simply, the constitutionality of the statute was not clearly settled at that time, and Commissioner Motil is entitled to qualified immunity. Thank you. I'm not sure who wants to do the rebuttal, but you've got some time. Thank you, Your Honor, and I will try to make it short. Even under the broad reading of the statute that the district court was using that was being argued at that time by the state, even under that broad reading of the statute, there was no compelling state interest that was being advanced by this statute. And now the state is arguing for a much narrower construction of the statute, so we started from really zero compelling state interest to something even less than that. There's no compelling state interest that's being promoted by this statute, regardless of how it's read. And because there's no compelling state interest being advanced by this statute, the statute was patently unconstitutional. And under Grossman, Mr. Motil or any other government official simply cannot rely upon that statute to insulate or to claim qualified immunity. It's a bit more muddled now, though, given the state's concessions about the scope of the statute, isn't it? I mean, you had some broad proclamations in there that if the statute were construed this way, it would clearly violate the First Amendment and should have been on notice. But now we have concessions that maybe the only thing that violates the statute is to circulate a copy of the filed complaint. That's it. Well, it sounded like to me, and that's a lot narrower than all of the ghosts that we saw, you know, and the interference with speech that the brief seemed to suggest. The reality is we have a moving target, basically, and we're responding to a different statute now than what was argued by the state at the district court, which in and of itself introduces some rather serious vagueness issues and brings up the question of how a citizen is supposed to interpret the statute when even the state has differing versions of how to interpret the statute based on what day it is. The bigger problem, though, is that even if we take the narrowest version of the statute that they're now advocating, it doesn't advance a compelling state interest. So if you're a government official, especially an attorney, and you've got a statute that you know is content-based that suppresses speech and does not advance a compelling state interest in any fashion, which this doesn't, then that makes the statute patently unconstitutional. Well, I think I've signaled it clearly enough as to my own view on the matter. It does seem to me content-based, but a very well-respected, thoughtful district judge thought, with respect to Ms. O'Leary, that it was not content-based. Yes, he did. And I'm not going to call that district judge clearly incompetent. Well, and I'm not either, but the problem is Mr. Modell had to anticipate it, even though Judge Morris would have disagreed with that. Well, he shouldn't have had to anticipate what Judge Morris said because Judge Morris hadn't issued his ruling yet. All that Mr. Modell had before him was a statute that clearly suppresses speech, that doesn't advance any compelling state interest whatsoever. As an official and as an attorney, Mr. Modell should have been able to look at that and realize this statute is unconstitutional. I can't prosecute Mr. Chida based on a violation of this statute, and I certainly better not six days before the election threaten him with prosecution and tell the public, tell the voters, I'm going to prosecute him. Well, you know, there's a little bit of pot and kettle. Mr. Chida kind of invites this by releasing it a few days before the election. I mean, I've got two political actors who are at each other's throats, and you want me to punish one and reward the other. My client, my political actor, doesn't have the authority to prosecute people, to fine people, to put people in jail. I understand that. The state does. But for you to say it's evil for Mr. Modell to have had any political motive at all, but your client is pure as the driven snow, no. I've got two political actors who are at each other's throats, and you want me to protect one of them. When one of those political actors can put the other one in jail or impose a fine, yes, absolutely. They should be held to two different standards. And if you had put him in jail, I would think this would be quite a different case. Yes, Your Honor. Okay, thank you. I don't have anything further. Thank you. Thank you very much. Very interesting case and very nice arguments, including from UCLA. Thank you. Sheeter v. Modell, Mangan, submitted for decision. That completes the argument for the week. Thank you.
judges: W. Fletcher, Bybee, Burns